## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| KRYSTYNA PAJAK, <br><br> Plaintiff, <br><br> v. <br><br> JOHN E. POTTER, POSTMASTER GENERAL, U.S. POSTAL SERVICE <br><br> Defendant. | Civ. Action No. 05-4622 (KSH) <br><br><br> **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff Krystyna Pajak, appearing *pro se*, has filed a complaint against John E. Potter, Postmaster General of the U.S. Postal Service, alleging that she was discriminated against during her employment with the U.S. Postal Service on the basis of national origin, gender, age, and disability. Plaintiff also alleges the Postal Service retaliated against her because she filed an administrative complaint alleging discriminatory conduct by management. Defendant moves to dismiss pursuant to Federal Rule of Procedure 12(b)(6) based on plaintiff's failure to timely file the complaint, and, alternatively, based on plaintiff's failure to exhaust administrative remedies. For the reasons that follow, defendant's motion is **denied**.

II.     FACTS

Plaintiff is a 55 year old, Polish-American female who was employed as a letter carrier for the U.S. Postal Service in Summit, New Jersey for a period of at least three years.[1]  She alleges a variety of discriminatory actions beginning in May 2002 and continuing through June 2005.

It appears from a careful reading of the complaint that plaintiff is contending that she was subjected to constant discrimination by four of her supervisors based on her national origin (Polish), her gender (female), her age (over 40), and a disability (a back injury suffered on the job).  Plaintiff states that she experienced "systematic targeted discrimination from postal management designed to result in [her] resignation or termination," and that, at certain points, "she experienced almost every day verbal abuse."  (Pl.'s Br. at 5, 11.)  Additionally, plaintiff claims that management retaliated against her for filing a discrimination complaint with the Postal Service's Equal Employment Opportunity Office ("EEO Office"). Plaintiff alleges, *inter alia*, that this discrimination and retaliation against her took the form of:

    (1)      wrongful denial of sick leave;
    (2)      improper issuance of notices of suspension and removal;
    (3)      verbal abuse;
    (4)      disparate treatment in the context of job performance observation and evaluation by her supervisors; and
    (5)      disparate treatment regarding work assignments.

Plaintiff claims that she is entitled to relief because she "is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendant's discriminatory [employment] practices."  (Compl. at ¶ 40.)  Defendant has filed a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6) or for summary judgment pursuant to Rule 56 based on

---

[1]  Based on the information provided to the Court to date, it is unclear exactly when plaintiff became a Postal Service employee or if plaintiff is still employed by the Postal Service.

plaintiff's failure to timely file the complaint, and, alternatively, based on plaintiff's failure to exhaust administrative remedies.

## III.   PROCEDURAL HISTORY

Plaintiff appears to have formally complained of discriminatory treatment for the first time on January 5, 2004, when she contacted the EEO Office to arrange a meeting with a dispute resolution specialist. (Sturman Decl. at Ex. A, Pre-Complaint Counseling for Case No. 4A-070-0057-04.) Specifically, plaintiff complained that she was discriminated against based on national origin, gender, and age when she was issued a notice of removal effective February 21, 2004. Plaintiff agreed to mediate the dispute and the parties subsequently entered into a settlement agreement whereby plaintiff's removal was held in abeyance for several months while her performance was further evaluated. (Sturman Decl. at Ex. C, Settlement Agreement for Case No. 4A-070-0057-04.)

Plaintiff's next contact with the EEO Office appears to have been on October 21, 2004, when she requested an appointment with a dispute resolution specialist regarding a notice of removal she received on October 12, 2004. Plaintiff told the EEO counselor that: (1) she was injured at work on September 22, 2004; (2) she was disciplined on numerous occasions "for not working as fast as younger employees"; (3) errors in pay and promotion were not taken seriously by her supervisors; (4) she was publicly humiliated about how she spent her first uniform allowance; and (5) "all of the above instances and many more not listed here, describe what I believe to be *systematic targeted discrimination* against me designed to result in my resignation from the Postal Service, which I refuse to do." (Sturman Decl. at Ex. D, Information for Pre-Complaint Counseling for Case No. 4A-070-0010-05) (emphasis added). Responding to a question on the form asking what resolution she

-3-

sought, plaintiff stated that she "deserve[d] to be treated with respect," and that she had a "right to work without excess stress, harassment, intimidation, threats or bullying by management." (Id.)

Apparently unable to resolve the problem through counseling, plaintiff filed a complaint of discrimination with the EEO Office on December 18, 2004, which included 10 incidents that plaintiff said were evidence of discriminatory treatment. The incidents were alleged to have occurred between September 2003 and December 2004.[2] The EEO Office dismissed seven of the claims as untimely and addressed (1) denial of plaintiff's request for sick leave on December 10, 2004; (2) plaintiff's receipt of a notice of removal on October 12, 2004; and (3) plaintiff's receipt of a notice of removal on December 13, 2004. (Sturman Decl. at Ex. H, Notice of Final Decision dated June 24, 2005 for Case No. 4A-070-0010-05).

In its Notice of Final Decision, the EEO Office dismissed these claims on the merits, determining that: (1) plaintiff had not met the burden of proving a *prima facie* case of disparate treatment discrimination; (2) plaintiff had established only that she had a "medical condition" and had not established that she was an individual with a disability; and (3) plaintiff had not established a *prima facie* case of retaliatory treatment based on her earlier EEO complaint. (Sturman Decl. at Ex. H, Notice of Final Decision dated June 24, 2005 for Case No. 4A-070-0010-05).

The Notice of Final Decision was mailed to plaintiff and plaintiff's attorney on June 24, 2005. Plaintiff filed this civil action *pro se* on September 23, 2005.

---

[2] The Court notes that two of the ten claims did not contain dates.

-4-

## IV.    STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002).  The issue to be decided "is not whether [plaintiff] will ultimately prevail in a trial on the merits, but whether [she] should be afforded an opportunity to offer evidence in support of [her] claims." Id. A court may not grant a motion to dismiss for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Id.

## V.    DISCUSSION

### A.  Plaintiff's Claims

Plaintiff's *pro se* complaint does not clearly articulate the legal basis for each of her claims. However, the Court is mindful that *pro se* litigants must be given "greater leeway where they have not followed the technical rules of pleading." Tabron v. Grace, 6 F.3d 147, 153 n.2 (3d Cir. 1993). With that standard in mind, the Court deduces that plaintiff's claims are as follows:

(1)    Defendant engaged in various unlawful, discriminatory employment practices based on plaintiff's national origin and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), plaintiff's age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"), and plaintiff's disability in violation of the Rehabilitation Act 1973, 29 U.S.C. § 701, et seq. ("Rehabilitation Act");

(2)    Defendant engaged in various unlawful, retaliatory employment practices undertaken in response to plaintiff's filing of discrimination complaints with the Postal Service's EEO Office, in violation of Title VII, the ADEA, and the Rehabilitation Act; and

(3)    Defendant created a hostile work environment in violation of Title VII, the ADEA, and the Rehabilitation Act.

**B.  Procedural Requirements**

Federal employees, such as plaintiff, who believe they have been discriminated against on the basis of sex, national origin, age, or handicap, must consult an EEO counselor within 45 days of the date of the alleged discriminatory treatment.  29 C.F.R. § 1614.105(a)(1).  Thereafter,

> [u]nless the aggrieved person agrees to a longer counseling period . . . the Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person contacted the agency's EEO office to request counseling.  If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint.  The notice shall inform the complainant of the right to file a discrimination complaint [with the agency's EEO office] within 15 days after receipt of the notice . . . .

29 C.F.R. § 1614.105(d).  The agency's EEO Office is directed to dismiss a complaint if it "fails to comply with the applicable time limits contained in §§ 1614.105, 1614.106 and 1614.204(c)."

An employee has two options if s/he is not satisfied with the EEO Office's decision: (1) file an appeal with the Equal Opportunity Employment Commission ("EEOC"); or (2) file a civil action in an appropriate U.S. District Court.  The final decision of the EEO Office must notify the employee of their right either to appeal or to sue.  A civil action must be filed within 90 days of receipt of the right-to-sue letter from the EEO Office.  42 U.S.C. § 2000e-5(f)(1); Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001).  The 90-day filing period is treated as a statute of limitations.  Burgh, 251 F.3d at 470.

**C.  Defendant's Argument that Complaint Was Not Timely Filed**

The Notice of Final Decision in EEO Office case no. 4A-070-0010-05 was mailed to plaintiff via regular mail and to her attorney via certified mail on June 24, 2005.  There is no indication as to when plaintiff received the Notice of Final Decision, but her attorney signed for the mailing on

June 28, 2005.  (Sturman Decl. at Ex. H:9, Notice of Final Decision dated June 24, 2005 for Case No. 4A-070-0010-05).  The Notice of Final Decision clearly stated that plaintiff had a right to "file a civil action in the appropriate U.S. District Court *within 90 calendar days of receipt* of the Postal Service's final decision."  (Id.) (emphasis added).

Plaintiff filed a complaint in district court, along with an application to proceed *in forma pauperis* ("IFP"), on September 23, 2005 – 87 days after her attorney received the Postal Service's final decision.  Plaintiff did not pay the required $250 filing fee at that time.  This Court denied plaintiff's IFP application in an order dated October 18, 2005 and, as a result, the case was terminated.  The case was re-opened nine days later on October 27, 2005 after plaintiff paid the $250 filing fee.

Although it is unclear exactly when plaintiff received the Notice of Final Decision, plaintiff is deemed to have received the notice on the date that it was received by her attorney.  Irwin v. Dept. of Veteran Affairs, 498 U.S. 92, 92-93 (1990).  Thus, the 90-day clock started to tick no later than the date her attorney received the notice, June 28, 2005, meaning that plaintiff's complaint was not timely filed if it was filed after September 26, 2005.

Plaintiff filed a *pro se* complaint on September 23, 2005, but did not tender the $250 filing fee until October 27, 2005.  Defendant argues that the complaint must be dismissed in its entirety as not timely filed because the 90-day period elapsed between the Court's denial of plaintiff's IFP application on October 18, 2005 and payment of the filing fee on October 27, 2005.  This legal position is surprising in the face of Third Circuit precedent that compels the opposite result.

In McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996), the court declared that a complaint is deemed "constructively filed as of the date that the clerk received the complaint

-7-

– *as long as the plaintiff ultimately pays the filing fee* or the district court grants the plaintiff's request to proceed in forma pauperis." Id. at 191 (emphasis added).  The McDowell court held that a complaint which had been sent to the clerk's office on October 25, 1993, without a filing fee or an IFP application, was deemed constructively received on October 25, 1993 even though the plaintiff did not submit an IFP application (which was later granted) until 14 months later.  Id. 190-91.  The McDowell court held that payment of the filing fee has the effect of relating back the filing date "to the date on which the clerk received plaintiff's papers."  Id.  This precedent makes it plain that when plaintiff paid the filing fee on October 27, 2005, her complaint was deemed filed on September 23, 2005, which is timely because her time to file a complaint in district court did not expire until September 26, 2005.

**D.  Defendant's Other Arguments for Dismissal**

It is well-settled that "a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief."  Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997).  The exhaustion requirement:

    (1)    promotes administrative efficiency by preventing premature interference with the agency process;

    (2)    respects executive autonomy by allowing an agency the opportunity to correct its own errors;

    (3)    facilitates judicial review by affording courts the benefit of the agency's experience and expertise; and

    (4)    serves judicial economy by having the agency or other tribunal rather than the district court, compile the factual record.

Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986).  In Title VII cases, "failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations."  Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

Defendant argues that plaintiff's failure to timely exhaust her administrative remedies with respect to the allegations set forth in paragraphs 7-16, 28-29, and 33-34 of her complaint warrant dismissal of these claims. Additionally, defendant further argues that plaintiff's allegations relating to a January 5, 2004 Notice of Removal should be stricken since these claims were settled during the administrative process.

Despite the fact that there has not been any discovery in the present case, defendant has asked the Court to consider a significant amount of material outside the pleadings in deciding these issues and has suggested that the Court convert this motion into one for summary judgment. The Court declines to do this. As indicated earlier when the Court reviewed the substance of the complaint, plaintiff has raised a variety of fact-based claims of discrimination. Defendant did not address the validity of these claims in his brief and has instead focused on a two-pronged procedural attack that is dead wrong in one respect, and broadside in the other. Thus even were the Court to rule in defendant's favor on the procedural challenge to selected counts, portions of the complaint would remain intact. What then? Another go-'round of motion practice directed to the complaint would mean piecemeal litigation that is both undesirable and inefficient.

Taking potshots at the complaint without taking a position by answering it gives defendant an advantage where the defendant is institutional and the plaintiff is grieving actions of defendant's employees. Granting a motion to dismiss before the defendant takes a position on responsibility for the actions does not do justice. Defendant's motion is denied and he is directed to file an answer within 20 days. Thereafter, the parties will be directed by Magistrate Judge Patty Shwartz respecting discovery – limited or full – and any dispositive motion practice.

-9-

## VI.    CONCLUSION

For the reasons stated above, defendant's motion is **denied**.  Defendant shall file an Answer within 20 days.  Dispositive motion practice thereafter shall be based upon directions and briefing schedules issued by Magistrate Judge Patty Shwartz.   An appropriate order will be entered.


Dated:  October 30, 2006                                      /s/ Katharine S. Hayden

                                                             Katharine S. Hayden, U.S.D.J.